## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RONALD WAMPLER** | ) | |
| *on behalf of himself and others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  22-cv-2242-HLT-RES |
| | ) | |
| **WIRECO WORLDWIDE GROUP,** | ) | |
| **INC.** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF *UNOPPOSED* MOTION FOR APPROVAL OF STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE FOR COLLECTIVE ACTION

Named Plaintiff Ronald Wampler ("Named Plaintiff"), on behalf of himself and the Opt-In Plaintiffs described below (the "Collective Class Members")—and unopposed by Defendant WireCo Worldwide Corporation ("Defendant" or "WireCo")[1]—hereby submits his Unopposed Motion for Approval of the Parties' Stipulation of Settlement Agreement and Release (the "Stipulation") (the "Motion").  The Motion requests that the Court issue an Order granting approval of the Parties' Stipulation of Settlement Agreement and Release (hereafter, the "Settlement Agreement") (attached hereto as **Exhibit A**) and authorizing the Parties to implement the procedures required under the Settlement Agreement.  The Court should grant the Motion and issue the proposed Order because the Settlement Agreement is fair, reasonable, and the product of arm's length negotiations.

---

[1] Named Plaintiff, the Collective Class Members, and Defendant shall collectively be referred to as the "Parties" and each, individually, a "Party."

## PROCEDURAL BACKGROUND

The Named Plaintiff Ronald Wampler filed a Complaint (Doc. 1) on June 22, 2022 against the Defendant, alleging in Counts I & II that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, and Missouri's Minimum Wage Law ("MMWL"), Mo.Rev.Stat. § 290.500 *et. seq.*, (for plants located in Missouri) by failing to pay him and other hourly manufacturing employees who worked at Defendant's plants located in numerous states overtime pay for work performed "off the clock."

The Defendant denies that it owes any unpaid wages or overtime compensation to Named Plaintiff or any other persons including, but not limited to the Collective Class Members, denies that the Collective Class Members are similarly situated, denies that it has violated the FLSA, MMWL or any other law, rule or regulation relating to the payment of compensation and maintains that it has at all times properly compensated the Named Plaintiff and all other persons including, but not limited to the Collective Class Members; and

The Named Plaintiff and Defendant have exchanged initial factual disclosures, conducted initial discovery, and engaged experts to review time keeping records and pay data and to prepare reports, and such discovery has enabled each party to understand and assess the detail and substance of their respective claims and defenses. A bona fide dispute exists between the Named Plaintiff and Defendant as to the amount, if any, of wages and overtime compensation owing to the Named Plaintiff and Collective Class Members; and

On November 30, 2023, the Parties entered into a Joint Stipulation Regarding Conditional Certification and Proposed Notice to Potential Collective Class Members (Doc. 29) regarding the hourly employees working in Defendant's three Missouri locations (Chillicothe, Kirksville, Sedalia).  The Named Plaintiff, with the Court's approval, on December 16, 2022,

sent a notice of this Civil Action (as defined in Section 1.3, below) and Consent Forms (as defined in Section 1.7, below) to 632 persons that were deemed the collective. By the deadline for returning the Consent Forms, 35 were returned. However, four (4) of these persons were deemed to not have employment with the statute of limitations. Therefore, the Parties deemed acceptable a total of 32 opt-in Plaintiffs and the Named Plaintiff who make up the 33 Collective Class Members. On about July 7, 2023, at a day long mediation session, the Parties reached agreement on the material terms of a settlement resolving the Named Plaintiff's and the Collective Class Members' claims, which was memorialized in the Settlement Agreement.

## FACTUAL BACKGROUND

**A.    The Litigation and The Settlement Discussions**

The Parties have conducted a thorough investigation into the facts and have extensively analyzed the issues in this action. Collective Class Counsel diligently pursued an investigation of the Collective Class Members' claims against WireCo. WireCo produced payroll records and timekeeping data for the Collective Class Members. WireCo also produced copies of documents concerning Company policies and procedures related to all aspects of timekeeping, compensation, and training, as well as e-mails. Plaintiff produced sworn declarations of the Collective Class Members and numerous completed interrogatory responses. The Parties examined the documents concerning the employment policies and procedures related to the allegations, Defendant's timekeeping systems and practices, related collective bargaining agreements applicable to some of the Collective Class Members, and reviewed payroll and timekeeping data of all Collective Class Members. Named Plaintiff engaged a statistical and pay data expert, who analyzed the data and issued reports regarding the Collective Class Members' allegations of off-the-clock work and potential damages. Named Plaintiff provided those

findings to WireCo, which responded to the alleged damages with specific counterpoints at the mediation session.

As a result, the Parties understand the detail and substance of their respective claims and defenses. *Bona fide* disputes exist between the Parties as to whether the Collective Class Members worked any time for which they were not properly compensated and, if so, how much time they claimed to have worked without proper compensation and whether that time was *de minimis*. WireCo further disputes that the case is appropriate for collective action treatment and intends to move to decertify conditional class certification in the future if the case does not resolve. The Parties recognize the substantial risks that each side faces with proceeding through the decertification phase, trial and prevailing on the merits of their claims. In addition, the Parties would further incur substantial costs to continue litigation including numerous depositions and motion practice. Ultimately, the Parties have agreed to settle this dispute, subject to the terms and conditions set forth in the Settlement Agreement attached to this Motion.

## 1.      The Settlement Payments

Under the Settlement Agreement, WireCo will pay $70,000.00 to settle this action (the "Settlement Fund for the Collective Class"). (Settlement Agreement, attached as **Exhibit A**, at §1.19). This fund is the total amount of settlement money to be paid by WireCo and set aside to pay Named Plaintiff, the Collective Class Members, Collective Class Counsel for fees and expenses, applicable federal, state, local and/or payroll taxes. (*Id*.) Each Collective Class Member will receive a pro rata distribution of the Net Settlement Fund, as defined and calculated pursuant to the Settlement Agreement (reflected in the Settlement Agreement—Exhibit C).

Each Collective Class Member shall be paid a pro-rata portion of the Net Settlement Fund based on the overtime compensation allegedly due to the Collective Class Member, as determined by his expert witness, Dr. Liesl Fox, PhD, and adopted by WireCo as the offer of

settlement to each Collective Class Member.  (Settlement Agreement, § 4.1)  In determining the amount of compensation allegedly due to each of the Collective Class Members, Dr. Fox: analyzed the payroll data provided by WireCo for each  Collective Class Member and the average number of hours each Collective Class Member reported working each workweek that was rounded away on Defendant's timekeeping system; determined whether the compensation paid based on weekly compensation met the overtime  pay allegedly due to each Collective Class Member.  This calculation is tied to the Collective Class Member's specific allegations made to Class Counsel and based on the actual weeks worked during the relevant time period according to the individual's payroll and earnings data.  The Net Settlement Fund for the Collective Class available for distribution to the Collective Class Members and for the Named Plaintiff Service Payment equals $37,162.00.  (Settlement Agreement, at §1.11).   Under the Plan of Allocation, after the deduction for all fees and expenses, each Collective Class Member will be receiving 1.4 times the total overtime allegedly owed to them.

The settlement checks will be mailed to the Named Plaintiff and Collective Class Members within 30 days after the Court's approval.  (Settlement Agreement, §1.13) The settlement checks will be valid for 90 days.  The bolded language of the notice enclosed with each check (Settlement Agreement, Ex. B), clearly states that the check must be negotiated within ninety (90) calendar days.  Before sixty (60) days after the settlement checks have been mailed, and in connection with its month-end reconciliation process, WireCo will provide Collective Class Counsel with the names of any individuals who have not yet cashed or otherwise negotiated their checks.  Collective Class Counsel will make reasonable efforts to locate and contact such individuals who have not negotiated checks issued reminding them of the approaching 90-day deadline. (Settlement Agreement, at § 5.5).

The released claims are further explained in the Settlement Agreement. However, Class Members will not be providing a general release of all claims in exchange for the settlement payments. The claims of any Collective Class Member who signs, endorses, cashes, deposits or otherwise negotiates any settlement check will be deemed to have released the Released Claims. (*Id*. at §6.1-6.2) Collective Class Members who do not negotiate any of their settlement checks within the 90-day period will not release the Released Claims. To the extent that any Collective Class Member declines the opportunity to participate in the Settlement or to sign, collect, cash, deposit or otherwise negotiate any settlement checks, the portion of the Settlement Fund allocated shall revert to Defendant and they shall not be deemed to have released any of the Released Claims. (Settlement Agreement, § 5.6).

Class Counsel seeks payment for attorneys' fees of $23,100, which is 33% of the Settlement Fund. (Settlement Agreement, at §3.1). Plaintiffs' counsel also seeks reimbursement of $7,238 for costs and expenses necessarily incurred for this litigation. (*Id.*). For his service to the Collective Class Members and in recognition of the benefit he created for the Collective Class Members, the Named Plaintiff Wampler will receive a service payment in the amount of $2,500. (*Id.*, at § 4.2). This amount is in addition to any pro rata payment made to Named Plaintiff. The basis for the requests made in this paragraph are set forth herein.

## 2.    Procedure

The Named Plaintiff has signed the Settlement Agreement. Pursuant to the Settlement Agreement, within 30 days after the Court issues an order granting approval of the Settlement Agreement, the Defendant will send to each Collective Class Member a Notice and Release Form, attached to the Settlement Agreement as Exhibit B. (Settlement Agreement, §5.1). The Notice will provide their respective gross settlement payment, explain how each Collective Class Member's Pro Rata Distribution will be calculated, describe all fees and costs requested by Class

Counsel, and include instructions on how to participate in the Settlement.  The Notice will further explain what claims they will be releasing (the "Released Claims" as defined in the Agreement at §§ 5.2, 7.2).  In summary, the 33 Collective Class Members will not have to take another other affirmative steps to receive payment under this Agreement other than negotiate the checks sent to them by Defendant.

## THE COURT SHOULD GRANT APPROVAL OF THE SETTLEMENT AGREEMENT BECAUSE THE PROPOSED SETTLEMENT REFLECTS A REASONABLE COMPROMISE OF THE PARTIES' CLAIMS AND DEFENSES

Settlements under the FLSA may require court approval because private settlements under the FLSA will not effectuate a valid release.  "A settlement of claims brought under the FLSA must be presented to the court for review and a determination of whether the it is fair and reasonable."  *Mpia v. Healthmate Intl., LLC*, 19-CV-02276-JAR, 2021 WL 2805374, at *1 (D. Kan. July 6, 2021).

> The requirement of court approval of FLSA settlements has recently been called into question by some courts. *See, e.g.*, *Riley v. D. Loves Rests., LLC*, No. 20-1085 WJ/KK, 2021 WL 1310973, at *1−4 (D.N.M. Apr. 8, 2021) (concluding that court need not approve private settlement of bona fide dispute regarding FLSA liability); *Lawson v. Procare CRS, Inc.*, No. 19-00248-TCK-JFJ, 2019 WL 112781, at *2−3 (N.D. Okla. Jan. 4, 2019) (same); *Fails v. Pathway Leasing LLC*, No. 18-00308-CMA-MJW, 2018 WL 6046428, at *2−4 (D. Colo. Nov. 19, 2018) 2018) (same). While this issue has not been settled by the Tenth Circuit, "there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court." *Slaughter v. Sykes Enters., Inc.*, No. 17-02038-KLM, 2019 WL 529512, at *6 (D. Colo. Feb. 11, 2019) (citing *Thompson v. Qwest Corp.*, No. 17-1745-WJM-KMT, 2018 WL 2183988, at *2 (D. Colo. May 11, 2018)). The parties here request court approval and neither suggests that it is not required, and the Court therefore applies the standard used by courts in this district to scrutinize FLSA settlements.

*Id.* at fn. 3.

Accordingly, wage claims arising under the FLSA are typically settled or compromised in one of two ways.  First, under Section 216(c) of the Act, the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them.  An employee who accepts

such a payment thereby waives his right to bring suit for both the unpaid wages and for liquidated damages. *Lynn's Food Stores v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982). Second, pursuant to a private enforcement action under § 216(b) of the Act, the District Court may approve a settlement reached as a result of contested litigation to resolve a bona fide dispute between the Parties over FLSA coverage. *Id.* When the latter option is proposed, as it is here, the court may enter a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946)).

Therefore, the Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. First, the court must be satisfied that the settlement was the product of "contested litigation." Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties over FLSA coverage. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Where, as in this case, the record is complete with all material facts and terms relating to the Settlement of this matter, a fairness hearing is unnecessary. *See Smith v. Solan Trucking & Excavating, Inc.,* Case No. 6:08-cv-1044-orl-19DAB, 2008 U.S. Dist. LEXIS 100899 at *1, fn.1 (Dec. 3, 2008 M.D. Fla.) ("As the papers set forth all essential terms, no fairness hearing was necessary."); *Chappetto v. Condominium Concepts Management, Inc.,* Case No. 6:08-cv-924-Orl-19DAB, 2008 U.S. Dist. LEXIS 61778 *1 fn. 1 (July 30, 2008 M.D. FLA) (where the terms of the FLSA settlement are fully disclosed to the court, no fairness hearing is necessary); *see also Amador v. Healthy Howard, Inc*., 2015

U.S. Dist. LEXIS 86378  (D. Md. July 2, 2015). This Court should readily conclude that this Settlement is also a reasonable resolution of a bona fide dispute in contested litigation.

**B.**      **The Proposed Settlement is the Product of Contested Litigation.**

The proposed settlement is undeniably the product of contested litigation. In his Complaint, Plaintiff made detailed factual allegations describing WireCo' allegedly non-compliant compensation practices.  Defendant filed its Answer, which denied all of Plaintiff's material factual allegations, and asserted an array of defenses, some of which they argued would bar Plaintiff's claims in whole or in part.

As explained above, the Parties conducted extensive factual investigations regarding the issues raised in Plaintiff's Complaint.  This was accomplished by thoroughly interviewing the Plaintiff and the Collective Class Members and reviewing the documentation that they had available to them;  by obtaining the relevant pay Policies and Procedures of WireCo, and pay data; and by analyzing the sworn declarations and interrogatory responses of the Plaintiff, and all Collective Class Members.  Plaintiff extensively analyzed all of the Collective Class Members' payroll data and computed damage estimates. WireCo also conducted a thorough investigation of the facts and calculated hypothetical damages scenarios.  In addition to their factual investigations, the Parties also undertook legal analysis of the various issues implicated in this case.  This included analysis of the merits of Plaintiff's claims and of WireCo' defenses and by conducting extensive analysis of both the FLSA case law regarding decertification of similar cases and determination of the potential damages available.

The settlement of this lawsuit resulted only after arms-length negotiations at a day long mediation, significant and time-consuming data analysis, thorough factual investigation, extensive legal analysis, and discussions with opposing counsel regarding the proper settlement structure and process, the damage formulas, and legal positions.  Prior to the settlement, the

Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case and to express and defend their positions to both experienced counsel and a knowledgeable and respected mediator with extensive experience in wage and hour law. Accordingly, the Parties respectfully state that the Court should easily conclude that the proposed settlement was the product of contested litigation.

**C.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties over FLSA coverage.  The second issue involves a review of the fairness and reasonableness of the proposed settlement.  As explained below, the Parties respectfully suggest that the Court should conclude that both issues contemplated by this second prong of the settlement approval inquiry are satisfied.

**1.    A *Bona Fide* Dispute Exists Between the Parties**

Plaintiff alleged that WireCo' managers and its timekeeping systems enabled Collective Class Members not to report or record all time worked.  Specifically, Plaintiff asserted that he and the Collective Class Members worked weekly hours over 40 for which they were not paid. The Plaintiff further alleged that such failures to properly compensate him and Collective Class. WireCo denied Plaintiff's allegations. Specifically, WireCo argued that it maintained and distributed policies regarding complete and proper timekeeping and payment to Plaintiff and the Collective Class Members. WireCo also showed that it trained and educated Plaintiff and Collective Class Members on those policies and they affirmed their understanding of its policies to record and report all time worked.  WireCo further argued that most if not all of the time

"rounded away" under its timekeeping system was non-compensable, was not work, or was covered by the Portal-to-Portal exception to overtime pay.  WireCo also asserted that certain claims as to the dates and times Collective Class Members allegedly worked overtime without pay, were, as a practical matter, impossible.  WireCo also challenged that the Collective Class was "similarly situated" for final certification.

If Plaintiff's allegations were all ultimately correct, WireCo would be faced with the prospect of a significant monetary verdict in favor of the Collective Class Members and the litigation fees and costs of Class Counsel, as well as WireCo' own litigation fees and costs.  If WireCo' arguments were correct, then Plaintiff and the Collective Class Members faced decertification, a potential dismissal of their claims and no recovery of any kind.  Accordingly, the Parties respectfully state that the Court should readily conclude that a *bona fide* dispute between the Parties exists over the claims.

### 2.    The Proposed Settlement is Fair and Reasonable

This settlement was the product of well-informed, arms' length negotiations by experienced counsel on both sides.  Specifically, both Parties performed extensive analysis of damages, pertinent documentation and the facts and law applicable to the case. Substantial and lengthy settlement discussions were held before the Parties finally bridged the gap between the Parties' settlement positions and obtained the resolution described herein.  At every point in the litigation, the Parties' counsel vigorously defended their clients' position while assessing the risks of continued litigation, such as the fact that a court may decertify the action, a fact finder could determine the facts were in either sides' favor subjecting each Party to significant risks if the case was not found in their favor.  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in

11

settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694, 700 (E.D.Mo. 2002) (stating "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). In this matter, the Collective Class Members are receiving 1.4 of their alleged overtime owed—*after deduction of attorneys' fees and expenses.* Compare this outcome to *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010), where the court found that settling a case for just one-third of alleged wages owed was "exceptional."

Moreover, consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable.

### a.    Public Policy Favors Settlement

Public policy favors settlements. This is especially true in complex cases, such as this, where significant resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) (stating "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). Despite the complicated nature of the case, the Parties were able to get the matter resolved without additional protracted litigation.

### b.    Substantial Obstacles Existed if the Litigation Continued, and the Settlement Offers Substantial, Immediate Relief

As outlined above, the Parties disagree about the merits of Plaintiff's claims and the viability of WireCo' various defenses. If the litigation had continued, Plaintiff would have faced

many obstacles, including a decertification motion, motions for summary judgment, possible *Daubert* motions, and eventually a lengthy, complex and costly jury trial and possible appeals. Furthermore, even if Plaintiff prevailed on the issue of liability, Plaintiff faced obstacles in proving the fact and amount of damages suffered by Plaintiff and the Collective Class Members.

Without question, the proposed settlement brings substantial value to the claims of the Collective Class Members—all of whom granted Named Plaintiff the authority to settle the case on their behalf. Although the range of potential recovery at trial would possibly have been greater, it is equally likely the potential recovery would have been less. Consequently, this settlement brings value now, as opposed to years from now, and provides a certainty of result. The substantial benefits that will be made immediately available is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re BankAmerica,* 210 F.R.D. at 701 (stating "[a]s courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." (internal quotations omitted)).

### c.     Counsel and the Named Plaintiff Support the Settlement

Class Counsel and Defense Counsel have gained substantial knowledge of the facts and legal issues relating to the respective claims and defenses and have ample evidence on which to base an informed assessment of the proposed settlement. Again, all Counsel did a significant and extensive analysis of the claims, facts, and the voluminous payroll records. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, undersigned Counsel for each Party believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless

entitled to great weight." *In re BankAmerica,* 210 F.R.D. at 702.  Additionally, the Named

Plaintiff has executed the Settlement Agreement indicating his approval of the settlement.  In

consenting to join this matter, all Collective Class Members gave Mr. Wampler the authority to

do so with the advice of Class Counsel.  Accordingly, this Court should conclude that the

proposed settlement reflects a fair and reasonable resolution of a bona fide dispute and approve

the settlement.

**D.**    **Class Counsel Should be Entitled to a Reasonable Fee from the Settlement Fund:**

Named Plaintiff, on behalf of himself and as designated representative of the

conditionally certified collective action, seeks an award of thirty percent (33%) of the Settlement

Fund, or $23,100 as attorneys' fees, plus costs and expenses of $7,238.   Though an award of

attorneys' fees in an FLSA settlement is mandatory, the Court has discretion to determine the

amount and reasonableness of the fee.  *See McCaffrey v. Mortg. Courses, Corp.*, No. 08-2660-

KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011); *Lynn Food Stores v. U.S.,* 679 F.2d 1350,

1354 (11th Cir. 1982).  The fee amount sought was part of the negotiations in settling this matter.

Considering percentage fees awarded in other common fund cases within the Tenth Circuit, and

also applying the *Johnson v. Georgia Highway Express, Inc., infra,* factors explained below, the

33% contingency fee Plaintiff seeks in this case is abundantly reasonable and warrants this

Court's approval.

**1.**    **Thirty-three Percent of The Common Fund Is A Reasonable Fee.**

The preferred method for awarding attorneys' fees to a prevailing plaintiff is to award a

percentage of the common fund created by the litigation. *Gottlieb v. Barry*, 43 F.3d 474, 483

(10th Cir. 1994).  Indeed, payment under the hourly lode-star method has been rejected as

inefficient under one circuit court's study.[2]  Under the FLSA, prevailing plaintiffs are entitled to recover their reasonable attorneys' fees.  *See* 29 U.S.C. § 216(b).  In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Indeed, when it comes to fees, Local Rule 54.2(a)-(b) reflects the Court's desire that counsel reach an agreement regarding fees.  Following this guidance, Plaintiff and Defendant agreed that Plaintiff's  Class Counsel would receive 33% of the Settlement Fund as attorneys' fees, plus reimbursement of out-of-pocket costs and expenses.

The Tenth Circuit, like other Circuits, has expressed "a preference for the percentage of the fund method." *Gottlieb*, 43 F.3d at 483; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

---

[2] The Eighth Circuit (via a task force study) recognized the deficiencies of using the lodestar approach compared to percent of the common fund in the FLSA case *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245, n.8 (8th Cir. 1996) (emphasis added), and criticized it as follows:

   The Task Force discussed some of the ***deficiencies of the lodestar process*** particularly as it applies to a fund case. ***First***, calculation of the lodestar increases the workload of an already over-taxed judicial system. ***Second***, the elements of the lodestar process are insufficiently objective and produce results that are far from homogenous. ***Third***, the lodestar process creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law. ***Fourth***, the lodestar is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount. ***Fifth***, although designed to curb certain abuses, the lodestar approach has led to others. ***Sixth***, the lodestar creates a disincentive for the early settlement of cases. The report in this area added ". . . there appears to be a conscious, or perhaps, unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar." ***Seventh***, the lodestar does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered. ***Eighth***, the lodestar process works to the particular disadvantage of the public interest bar. ***Ninth***, despite the apparent simplicity of the lodestar formulation, considerable confusion and lack of predictability remain in its administration.

The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2nd. Cir. 2005) (emphasis added) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y Nov. 26)). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

Comparing common fund cases and statutory fee-shifting cases, the Tenth Circuit has held, "although time and labor required are appropriate considerations [in a common fund case], the results obtained may be given greater weight when, as in this case, the recovery was highly contingent and [when] the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). Courts in this District have followed the Tenth Circuit's "preference for the percentage of the fund method" in class actions and granted motions for fee awards similar to that requested here.  *E.g., In re Universal Serv. Fund Tel. Billing Practices Litig.*, 2011 WL 1808038, *2 (D. Kan. May 12, 2011) (finding award of one-third of the fund reasonable and appropriate).

Historically, courts in this District have approved fee awards in FLSA cases up to "58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to

16

over five million dollars." *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015); (citing *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *7 (D. Kan. July 14, 2009)).

The percentage of the fund that counsel seeks here as a fee falls squarely within the range this District has approved in other FLSA cases. *See*, *e.g.*, *id.* (concluding that a fee request that was 33% of the total settlement amount came within the range approved by this District and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting the same about the requested fee award, which was 33% of the common fund); *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (also approving fee award equal to 33% of the common fund).  Accordingly, an award of 30% of the common fund, plus out-of-pocket costs and expenses, is abundantly reasonable in this case.

### 2.    The Requested Fee Is Also Reasonable Under *Johnson* Factors.

Other factors that the Tenth Circuit considers in determining the reasonableness of an attorneys' fee award include the following twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).  Rarely are all of these factors relevant, particularly in a common

17

fund settlement, and the trial court has the discretion to determine which factors to weigh most heavily. *Brown*, 838 F.2d at 456. Nonetheless, applying these factors here confirms the reasonableness of the requested fee.

- *Johnson* Factor 1: Time and Labor Involved

The Tenth Circuit has de-emphasized the time and labor component of the *Johnson* factors in common fund cases, and even when considered, it "need not be evaluated using the lodestar formulation." *Brown* 838 F.2d at 456. Collective Class Counsel spent in excess of 200 hours on this case. These hours include time spent investigating the facts of this case; interviewing opt-in plaintiffs regarding their work experiences; gathering declarations in support of conditional certification; reviewing and working with class members in responding to written discovery, administering notice to putative opt-in plaintiffs and returning numerous phone calls to answer questions about the legal scope of this case; conducting discovery of and analyzing complete pay and time records for all opt-in plaintiffs; reviewing documents produced by Defendants; retaining and working with an expert witness to determine Collective Class Damages; participating in mediation; and drafting the Settlement Agreement and related motions and briefs. In the future, Collective Class Counsel will also incur additional hours of work in administering the settlement paperwork and answering questions from Collective Class Members about that process.

Collective Class Counsel's lodestar for just 200 hours (200 hours plus an expected 10 hours in the future) is approximately $90,000 (Utilizing a blended hourly rate of $450/hour for Plaintiff's counsel Brendan J. Donelon and Greg Tourigny). This hourly rate is consistent with the blended rates utilized in this District for FLSA collective settlements. *See, e.g., In re Bank of Am. Wage & Hour Emp't Litig.*, No. 10-MD-2138-JWL, 2013 WL 6670602, at *3 (D. Kan. Dec.

18, 2013) (calculating a lodestar with a blended hourly rate of $488); *Bruner,* 2009 WL 2058762, at *10 (awarding plaintiffs' counsel a fee in an FLSA settlement using an hourly rate of $590.91); *Koehler*, 2016 WL 3743098, at *5 (finding that a blended hourly rate of $400 is reasonable and approving a 1.3 multiplier to the lodestar, resulting in a fee award equal to 33% of the common fund).

In the cross-check analysis, the court multiplies the reasonable hours worked by reasonable billing rates to calculate a time-fee value. Next, "the Court divides the percentage-fee value by the time-fee value to determine a lodestar multiplier and to test whether the percentage fee value represents an unreasonable award or 'windfall' over the reasonable value of the work performed." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 658 (E.D. La. 2010); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex. 2008) (same). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 468 (S.D.N.Y. 2004). The lodestar cross-check does not involve strict rules, but rather is a guide to assist courts in evaluating the reasonableness of a percentage-based fee:

> [It] need entail neither mathematical precision nor bean counting. For example, a court performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient . . . . Furthermore, the lodestar cross-check can be simplified by use of a blended hourly rate . . . .

*In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d at 659 (citations omitted). The Second Circuit confirms that, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (citing *In re Prudential*, 148 F.3d at 342). Here, Class Counsel is

seeking only $22,100 in attorney's fees, *$67,900 lower* than the lodestar amount.  So, there is a negative effect in the lodestar analysis and not a multiplier.

- *Johnson* Factor 2: Novelty and Difficulty of Question Presented

FLSA collective actions are both procedurally and substantively complex.  By definition, off-the-clock work is not recorded.  This presents unique evidentiary hurdles to establishing both liability and damages.  WireCo claimed Plaintiff and each of the Collective Class Members had a mechanism for accurately recording their time worked.  However, the Collective Class Members reported that this was not allowed, resulting in the need to investigate the practices at numerous facilities to establish a common policy and practice.  WireCo intended to argue that differences among its various facilities warranted decertification.  This factor weighs in favor of approving the fee requested.

- *Johnson* Factor 3: Skill Requisite to Perform Legal Service Properly

Class Counsel Donelon, P.C. practices extensively for plaintiffs in FLSA collective and/or Rule 23 class actions.  (*See* Donelon, P.C. firm C.V. attached as **Exhibit B**).  As a specialized area of law, the landscape changes every day as a result of growing jurisprudence spanning the entire country.  Class Counsel stays abreast of the changing law to ensure they maximize their clients' recovery in cases pending all across the United States.  Few firms litigate these FLSA cases due to their specialized nature and the investment of time, energy, and financial resources required to appropriately pursue them.  Due to the nature of FLSA litigation, attorneys handling these cases must also be prepared to make these investments with the very real possibility of ultimately obtaining no attorney fees or recovery of costs expended.  This type of risk is outside the scope of risk that most attorneys and firms can and are willing to handle.

- *Johnson* Factor 4:  Preclusion of Other Employment

Collective Class Counsel litigated this case for close to two years. Due to the size of these types of cases, Collective Class Counsel is only able to pursue a handful of these matters at any given time. Therefore, as Counsel representing plaintiffs, the risk involved with the ability to receiving compensation for time worked is spread over fewer matters compared to an attorney practicing outside this specialized area of law. Working on these types of time-consuming cases leads to precluding work (and potential payment) on other cases.

- *Johnson* Factor 5: Customary Fee

Class Counsel customarily charges a 35-40% contingency fee. Here, Plaintiff Wampler entered into a fee agreement calling for a 35% contingency. Collective Class Counsel is seeking a lower amount – 33%. This factor weighs in favor of approval. *See, e.g., Koehler*, 2016 WL 3743098, at *7 (this factor favors approval where, as here, "[t]he requested fee award is less than the 40% contracted contingency arrangement, amounting to only 33% of the common fund.")

- *Johnson* Factor 6: Whether Fee is Fixed or Contingent

As explained for Factor 5, Collective Class Counsel took this case on a 35% contingency contract. Accordingly, Collective Class Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiff or the Class. Moreover, Collective Class Counsel's contingency arrangement required them to invest both time and expenses with no guarantee of recoupment. This factor favors fee approval.

- *Johnson* Factor 7: Time Limitations Imposed

While there were no unusual time limitations imposed by this case, the nature of this complex litigation posed a significant time commitment, as discussed in more detail for Factors 1 and 4 above.

- *Johnson* Factor 8: Amount Involved and Results Obtained

Class Counsel obtained an excellent result for all Collective Class Members, as described above.

- *Johnson* Factor 9: Experience, Reputation and Ability of Attorneys

Class Counsel Donelon has significant experience in litigating FLSA wage and hour cases across the country and enjoys an impeccable reputation for success and specialization in this area of law. Donelon has more than 27 years of legal experience and has served as lead class counsel in dozens of FLSA collective actions. Collective Class Counsel Donelon has recovered in excess of $100 million dollars on behalf of FLSA opt-in plaintiffs. This factor weighs in favor of fee approval. (*See* Exhibit A).

- *Johnson* Factor 10: Undesirability of the Case

Class Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this where there is a very real risk of no recovery and the time commitment is significant.

- *Johnson* Factor 11: Nature and Length of the Professional Relationship

Plaintiff Wampler worked with Collective Class Counsel for close to two years on this matter.

- *Johnson* Factor 12: Awards in Similar Cases

Fee awards of one-third of the common fund are common in FLSA cases, including "off-the-clock" cases (such as this). *See, e.g., Barbosa*, 2015 WL 4920292, at *11; *Bruner,* 2009 WL 2058762, at *7; *Koehler*, 2016 WL 3743098, at *8; *Payson v. Capital One Home Loans, LLC*, 2009 U.S. Dist. Lexis 88468, *6-8 (D. Kan. Sept. 24, 2009); *Barnwell v. Corrections Corp. of Am.*, Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and

Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008); *Burks v. Bi-State Redevelopment*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91 at 3, ¶8 & Doc. 102, p. 4, ¶9); *DeMunecas v. Bold Food, LLC*, 2010 U.S. Dist. Lexis 87644, *22-24 (S.D.N.Y. Aug. 23, 2010); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. Lexis 20446, * 20-21 (N.D. Ohio Mar. 8, 2010); *Wolfert v. United HealthGroup, et al.*, Case No. 4:08CV01643-TIA (E.D. Mo. May 5, 2009).  The prevalence of fee awards of one-third of the common fund in FLSA cases supports a fee award of 30% of the common fund created here.

Applying the *Johnson* factors, and considering the Tenth Circuit's preferred percentage of the fund approach and the fact that a one-third fee is regularly approved in these cases, Collective Class Counsels' 33% fee request is reasonable and warrants approval.

**Plaintiff's Request For Costs And Expenses Is Also Reasonable**

An award of reasonable attorneys' costs and expenses is also mandatory under the Fair Labor Standards Act.  *See* 29 U.S.C. 216.  Under the FLSA, this may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

23

Class Counsel requests reimbursement for $7,238 in expenses. (**Exhibit C**).  These expenses were reasonably and necessarily incurred in the prosecution of the case.  (*Id.*).  This includes filing and service fees, fees associated with mailing class notice and class member communication, and expert fees in reviewing data and preparing damage reports.  Notably, the costs of administering class notice were significant due to mailing to a large putative class members.  Also, the amount of expert fees was higher than usual due to data production requiring file merging into the Excel formatting and required a significant amount of time spent on data entry by Plaintiff's expert.  Accordingly, Plaintiff requests this Court approve Class Counsels' award of costs and expenses in this amount.

### Named Plaintiff Wampler is Entitled to a Service Award

The Parties' Settlement Agreement provides for a service award of $2,500 for Named Plaintiff Ronald Wampler, who provided invaluable service to Collective Class Counsel and, ultimately, the Collective Class Members. Plaintiff has worked with Collective Class Counsel for nearly two years to pursue these claims on behalf of Collective Class Members.  He provided necessary evidence in support of the conditional certification motion, and assisted Counsel in the discovery process to prepare for the mediation, and ultimately her knowledge of the workplace was very beneficial during this resolution.  He educated Class Counsel on many of WireCo' documents, policies, and practices; and this service enabled Collective Class Counsel to direct its discovery efforts and, in turn, obtain the best settlement result possible for all Collective Class Members.  Finally, Wampler was willing to put his name on this public filing against a prior employer.  Needless to say, this could have a negative impact on future employment.  Not surprisingly, many employers conduct background research on potential hires.  This includes searching the internet for that person.  Such a search could lead to discovering Wampler's action

against her employer – something that could be a negative consideration by future employers.

Without Plaintiff stepping forward to put his name on the lawsuit and his assistance over these years, it is unlikely that any recovery would have been as beneficial to the group.  This District has recognized that the time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving.  *See, e.g., Tommey v. Computer Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 11070580, at *1 (D. Kan. May 27, 2015) (approving $5,000 service award to named plaintiff Jennifer Tommey); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (approving a $5,000 service award to each named plaintiff, finding that amount adequately compensated each plaintiff for the 80 hours of time that each plaintiff, on average, devoted to the lawsuit); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (awarding a $5,000 service award to named plaintiff).

And, while the $2,500 service award Plaintiff seeks is less than the service awards approved in the cases cited above, District Courts often approve much higher service awards in the context of class and collective action litigation.  *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *see also Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 service award to each of three class representatives); *Kamp v. The Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004)) (approving up to $10,000 in service awards to class representative and other plaintiffs).  Accordingly, this Court should

approve the modest service payment requested in this case as a reward for Plaintiff's

contributions to the case and to the Class recovery as a whole.

Respectfully Submitted,



*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS 17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

ATTORNEYS FOR PLAINTIFF

Greg N. Tourigny
**The Tourigny Law Firm LLC.**
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
(816) 945-2861
greg@tourignylaw.com

Certificate of Service

I hereby certify that on July 24, 2023 a true and correct copy of the above and foregoing
was sent via this Court's requirements under CM/ECF and standing orders to:

ROBERT J. HINGULA
MATTHEW P.F. LINNABARY
Polsinelli, P.C.
900 W. 48th Place, Suite 900
Kansas City, MO 64112
816.753.1000
Fax No.: 816.753.1536
rhingula@polsinelli.com
mlinnabary@polsinelli.com